NO. 07-06-0108-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 23, 2007

_____

JOHNNY J. HERNANDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-409,597; HONORABLE CECIL G. PURYEAR, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, Appellant, Johnny J. Hernandez, was convicted by a jury of aggravated assault with a deadly weapon and punishment was assessed at twenty-five years confinement. The victim of the assault was Abel ("Gordy") Barajas, Jr., a three year old child. By his first four issues, Appellant contends the trial court erred in refusing

to allow defense counsel to question four separate witnesses, Amy Ramirez, Melissa Anbaz, Melinda Medina, and Kristi Hagood, as to the circumstances surrounding a 2004 Child Protective Services (CPS) investigation alleging physical abuse against the same victim in the underlying case. By his fifth issue, he alleges the trial court erred in denying his right to present a defensive theory by precluding questioning of Amy Ramirez and Melissa Anbaz regarding the 2004 CPS investigation. Finding no reversible error, we affirm.

**Background**

At the time of the offense, Appellant was living with Amy Ramirez, their infant child, Aeriel, and Amy's two other children from a previous marriage, Amaris, who was four years old, and Gordy, who was three. Amy worked at a restaurant that was owned by her sister, Melissa. Another of Amy's sisters, Melinda, was also employed at the restaurant. Appellant worked nights, and he and Amy had one vehicle between them. On March 10, 2005, Appellant dropped Amy off at work shortly before the lunch hour and returned home with the three children. Amy had planned for her former mother-in-law to pick up the children later that day for a visit. After dropping Amy off at work, Appellant was supposed to take the children home and clean them up for the visit.

Later in the day, Appellant returned to the restaurant and dropped off the children. Gordy was dressed in shorts, and Amy noticed that his legs were bruised, red, and hot to

2

the touch.  Gordy, who was described at trial as a hyper child, was unusually quiet that afternoon.  When questioned by Amy, he told her he had fallen in the tub.

Both of Amy's sisters testified that when they arrived at work that afternoon, Amy asked them to look at Gordy's legs.  They described them as red and warm to the touch and also noticed that Gordy was unusually quiet.  Melissa added that his legs had identical marks on them.

Sometime after 5:00 p.m., Appellant returned to the restaurant to pick up Amy and the children.  According to Amy's testimony, she did not call her former mother-in-law that day about the visit.  When Amy questioned Appellant about Gordy's legs, he claimed not to have noticed them.

Concerned about Gordy, Melinda told her mother and some other family members about his injuries.  Chris, Amy's brother, decided to report the incident to CPS.  This was not the first time CPS had been called to investigate allegations of abuse committed against Gordy.  On May 18, 2004, CPS had investigated Amy's mother for physical abuse of Gordy.  The final disposition of the case, however, ruled out abuse.

As a defensive theory at trial, Appellant claimed that Gordy's four-year-old sister, Amaris, had inflicted the injuries to Gordy's legs after chasing him around with a hairbrush or ruler.  The evidence, however, demonstrated that Gordy's injuries were consistent with having been spanked with a looped belt.  Additionally, the detective investigating the case

3

and the CPS investigator both testified that, in their opinion, although Amaris was a year older and taller than Gordy, she would not have had the strength to subdue him and inflict the injuries he sustained.

During the course of the trial, defense counsel repeatedly requested permission to question certain witnesses about the 2004 CPS investigation. Defense counsel's requests were based on four theories: (1) that the State "opened the door," (2) the credibility of the witnesses, (3) Amy's motive, and (4) Rule 404(b) of the Texas Rules of Evidence.[1] The trial court denied all requests. By his first four issues, Appellant maintains the trial court erred by refusing to allow him to question Gordy's mother, Amy (Issue One); Gordy's aunts, Melissa (Issue Two) and Melinda (Issue Three); and Kristi Hagood (Issue Four), a CPS supervisor, about the 2004 CPS investigation. This error, he argues, harmed him by affecting his substantial rights. We disagree.

The record contains bills of exception by Amy and Melissa. However, no bills were made reflecting what Melinda or Hagood would have testified to regarding the 2004 CPS investigation. The purpose of a bill of exception is to enable an appellate court to review the propriety of a trial court's ruling excluding evidence. Tex. R. App. P. 33.2. *See also*

---

[1]On appeal, Appellant contends he should have been allowed to question Amy and her sister Melissa pursuant to Rule 613(b) of the Texas Rules of Evidence. Rule 613(b) permits examination of a witness concerning bias or interest. At trial, however, Appellant did not request to proceed under Rule 613(b). It is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004). Thus, we will not address any arguments based on Rule 613(b).

4

*Stewart v. State*, 686 S.W.2d 118, 122 (Tex.Crim.App. 1984), *cert. denied*, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985); *Hooks v. State*, 203 S.W.3d 861, 864 (Tex.App.–Texarkana 2006, pet. ref'd), *cert. denied*, 535 U.S. 1085, 122 S.Ct. 1977, 152 L.Ed.2d 1034 (2002).  Error in the exclusion of evidence may not be urged unless the proponent perfected an offer of proof or a bill of exception.  *Guidry v. State*, 9 S.W.3d 133, 153 (Tex.Crim.App. 1999), *cert. denied*, 531 U.S. 121 S.Ct. 98, 148 L.Ed.2d 57 (2000).  Failure to make an offer of proof or a bill of exception where the record does not show what the excluded testimony would have been waives the complaint for appellate review.  Tex. R. App. P. 33.1(a)(1).  *See also Guidry*, 9 S.W.3d at 153.  Therefore, we find that issues three and four were not preserved for review.

In reviewing issues one and two, we will review the testimony presented by Amy and Melissa in their bills of exception in light of the theories pursued by Appellant at the trial court level.  In this light, we conclude that complaints regarding the trial court's failure to allow defense counsel to question Amy or Melissa concerning the 2004 CPS investigation do not present reversible error.

**Standard of Review**

An appellate court reviews a trial court's evidentiary ruling based upon an abuse of discretion standard.  *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex.Crim.App. 2004).  As long as the trial court's ruling is within the zone of reasonable disagreement, there is no

5

abuse of discretion and the trial court's ruling will be upheld. *See Rachal v. State*, 917 S.W.2d 799, 807 (Tex.Crim.App.1996), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996).

## RULE OF EVIDENCE 107 - "OPENING THE DOOR"

Rule 107 of the Texas Rules of Evidence, known as the rule of optional completeness, permits an opponent to correct any misleading impressions left with the jury through the introduction of only a portion of evidence. *Simpson v. State*, 975 S.W.2d 364, 368 (Tex.App.–Waco 1998, no pet.). It allows an opponent to question a witness on any subject which needs to be "fully understood" by the jury. *Id.* at 369.

### Amy's Bill of Exception Testimony

Appellant contends he should have been allowed to question Amy about the 2004 CPS investigation based on the State "opening the door" as to why Amy did not want her former mother-in-law to see Gordy on the day he was injured. According to Amy's bill of exception testimony, her former mother-in-law had reported the alleged abuse of Gordy in 2004, and she did not want her to find out about Gordy's current injuries for fear she would again report the incident to CPS. However, the 2004 investigation focused on Amy's mother as a suspect, and the investigation ruled out any abuse.

6

The 2004 CPS investigation of Amy's mother was not relevant or material to the offense for which Appellant was being tried. Amy's testimony during direct examination did not leave a misleading impression with the jury which needed clarification in order to be more fully understood. We conclude the trial court did not abuse its discretion in denying Appellant's request to question Amy concerning the 2004 CPS investigation based upon the rule of optional completeness.

**Melissa's Bill of Exception Testimony**

According to Appellant, the trial court's refusal to allow him to question Melissa about the 2004 investigation left the jury with the impression that this was the first time Gordy had been abused. Melissa's bill of exception testimony was brief. In that testimony Melissa acknowledged that Amy's mother was a suspect in the 2004 child abuse investigation and that Amy was part of the investigation. However, she also testified she was not too familiar with the case. She could not recall seeing bruises on Gordy in 2004 other than those resulting from "regular play" and she stated that she only saw Gordy occasionally when Amy was going to or leaving from work.

Neither Amy's nor Melissa's testimony was part of an act which needed to be more fully understood in order to avoid the risk of leaving a misleading impression with the jury. The allegation of abuse against Gordy in 2004 by his maternal grandmother and CPS's investigation of that incident were not relevant to the investigation which lead to Appellant being charged with abusing Gordy.

7

## RULE OF EVIDENCE 404(b) - CREDIBILITY -  MOTIVE

We are not convinced that Rule 404(b) even applies to witnesses and instead, will address Appellant's motive, character, and credibility arguments under Rules 607 and 608 of the Texas Rules of Evidence.  *See* Tex. R. Evid. 404(a)(3).[2]

## Rules of Evidence 607 and 608

Rule 607 provides that a witness's credibility may be attacked by any party.  Rule 608, however, prohibits inquiry on cross-examination into specific instances of conduct of a witness for the purpose of attacking credibility.

Great latitude should be allowed in cross-examining witnesses to reveal possible bias, prejudice, or motive to falsify testimony.  *Janeka v. State*, 739 S.W.2d 813, 830 (Tex.Crim.App. 1987).  Equally axiomatic is the trial court's wide discretion in determining the parameters of cross-examination to show bias.  *Chambers v. State*, 866 S.W.2d 9, 27 (Tex.Crim.App. 1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994).

---

[2]*See generally Martinez v. State*, No. 74292, 2003 WL 22508081, at *4 (Tex.Crim.App. Nov. 5, 2003) (not designated for publication) (providing that "[e]ven assuming, *arguendo*, that Rule of Evidence 404(b) applies to witnesses, the trial judge was within his discretion . . . .)

## Amy

Appellant attacks Amy's credibility for several reasons: (1) she did not report the incident involving Appellant to CPS; (2) the statement she gave to law enforcement contained inconsistencies with her trial testimony; and (3) she violated a Safety Plan by allowing her children to be around Appellant. Appellant did not establish the relevance of the 2004 CPS investigation involving Amy's mother to the charges filed against him. Rule 402 of the Texas Rules of Evidence provides that evidence which is not relevant is inadmissible. Additionally, Rule 608 prohibited Appellant from cross-examining Amy on specific instances of conduct for the purpose of attacking her credibility. We conclude the trial court did not abuse its discretion in denying Appellant's request to question Amy regarding the 2004 CPS investigation.

## Melissa

Appellant alleges that Melissa's bill of exception testimony reflects a bias toward her mother. Specifically, he urges that Melissa became evasive and could not recall seeing bruises on Gordy in 2004 once she realized that defense counsel's line of questioning was directed at the allegations against her mother in the 2004 case. Throughout his brief, Appellant fails to connect the relevance of the 2004 investigation involving Gordy's grandmother to the underlying case against Appellant. Gordy's grandmother was not a witness in the underlying case; therefore, her credibility was not an issue in this case.

9

## CONCLUSION - ISSUES ONE THROUGH FOUR

We conclude the trial court did not abuse its discretion in denying Appellant's request to question Amy or Melissa about the 2004 CPS investigation. Issue one complaining about Amy and issue two regarding Melissa are overruled. As mentioned previously, no bills of exception were made of Melinda's or Hagood's testimony and thus Appellant's complaints about them were not preserved for review. Accordingly, issues three and four are also overruled.

## ISSUE FIVE

By his fifth issue, Appellant asserts he was denied the right to present a defensive theory because of the trial court's denial of questions to Amy and Melissa regarding the 2004 CPS investigation. Specifically, he argues he was not allowed to put on evidence that another adult could have caused Gordy's injuries. We disagree.

An accused has the right to attempt to establish his innocence by showing that someone else committed the crime; however, he must still show that his proffered evidence regarding the alternative perpetrator is sufficient to show a nexus between the crime charged and the alleged alternative perpetrator. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex.Crim.App. 2002), *cert. denied*, 537 U.S. 949, 123 S.Ct. 415, 154 L.Ed.2d 294 (2002). *See also Martinez v. State*, 212 S.W.3d 411, 423 (Tex.App.–Austin 2006, pet. ref'd).

At trial, Appellant's defensive theory was that Amaris, Gordy's sister, had inflicted the injuries to Gordy's legs with either a hairbrush or ruler. On appeal, he argues that he should have been allowed to inquire into the 2004 CPS investigation to establish whether Amy, or another adult, could have been the perpetrator. The evidence established that Amy was at work and that Appellant was the only adult with the children when Gordy sustained his injuries. Additionally, the disposition of the 2004 CPS investigation ruled out abuse altogether and would not have been relevant in showing that Amy, who was not even a suspect in that investigation, or another adult could have abused Gordy. Appellant has not established that the trial court's decision excluded otherwise relevant evidence that was such a vital portion of his case as to effectively preclude him from presenting a defense. *See Wiley*, 74 S.W.3d at 405. We conclude the trial court's decision to exclude evidence regarding the 2004 CPS investigation did not deny him the right to present a defense. Issue five is overruled.

Consequently, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.


11